# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **ERROL FALCON, JR.** | **CIVIL ACTION NO. 3:13-cv-3303** |
|     LA. DOC #358400 | |
| VS. | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN TIGNER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff, Errol Falcon, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 30, 2012.[1] Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC); he is incarcerated at the Rayburn Correctional Center. He complains that he was denied prompt medical care while he was incarcerated at the Jackson Parish Correction Center (JPCC). He sued Sheriff Andy Brown, Warden Tigner, Nurse Freeman, Lt. Ray and other as yet unidentified parties. He prayed for compensatory damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

---

[1] Plaintiff signed his original complaint on October 29, 2013; it was mailed to the United States District Court for the Middle District of Louisiana on October 30, 2013. [Doc. 1, pp. 5-6] For the purposes of this report, plaintiff is given the benefits of the mailbox rule and his pleading is deemed filed as of the date he presented it to prison officials for mailing.

*Statement of the Case*

Plaintiff filed his original complaint in the United States District Court for the Middle District of Louisiana. In due course the matter was transferred to this Court and plaintiff was instructed to utilize the complaint form provided to prisoners in this district seeking relief pursuant to 42 U.S.C. §1983. On January 27, 2014, plaintiff submitted his complaint on the proper form. As previously noted, he sued Warden Tigner, Sheriff Andy Brown, Nurse Freeman and Lt. Ray along with "... his shift on 12/17/2011 also the major and other security officers..." He claimed that the defendants were "negligent in their medical attention." [Doc. 9]

On February 28, 2014, plaintiff was directed to amend his complaint to identify each defendant, to describe what each defendant did to violate his rights, the place and date where each violation occurred and to describe the injury he sustained as a result of the alleged violations. [Doc. 13] On March 28, 2014, he responded to the amend order. He claimed that he was still unable to name all of the defendants and indicated that he could provide identities only if he was permitted to propound interrogatories.

Thereafter plaintiff alleged that he was seriously harmed when he was bitten by a spider and that "...had it been treated properly from the beginning it could have been cured." Thereafter he alleged, "... through several complaints and trips to the Medical Department ... [he] was denied the proper medical treatment until the day of extreme negligence was suffered at the neglect incurred by the medical department ... for failing to have the Petitioner sent to the proper medical facility to have his leg cured and/or treated." "Instead," he claimed, "they awaited and after a substantial amount of time had elapsed, the infection took over his body and almost caused a near death experience and the loss of his leg." He claimed that "... the injury sustained

2

and the lack of medical care by the employees under the watch of Warden Tigner ... caused the 'deliberate indifference' and meet the standard required under the Eighth Amendment." He concluded the amended complaint by alleging the following with regard to the defendants: "(1) Failing to follow proper medical care; (2) Neglecting to administer proper medical care; (3) Failure to notify the proper medical facility of the injury sustained; (4) Failure to allow the Petitioner the right to obtain proper medical care; (5) The medical staff's failure of providing the Petitioner the proper care; and (6) Warden Tigner failing to monitor his staff and to ensure the safety of all those housed in JPCC..." He claimed thereafter that Warden Tigner was liable "... for failing to provide the proper medical care which if not had been treated at that point in time the Petition would have lost his limb and possibly his life due to the negligence incurred while at JPCC." He also provided a copy of the grievance he filed with prison officials on March 3, 2012. Therein he claimed:

On December 12, 2011, he killed a spider that was crawling on his leg. The following day, December 12, 2011, he noted swelling in the area where the spider was killed and on December 14, 2011, he submitted a request for medical care. On December 15, 2011, he was taken to the medical department where the knot on his leg was observed by a nurse who gave him the antibiotic Bactrim for use on the injury. On December 16, 2011, he noted that the swelling was increasing and he was experiencing difficulty walking. Plaintiff requested that he be sent to a hospital but the nurse told him to give the medicine time to work. On December 17, 2011, the pain and swelling had spread and plaintiff could no longer walk. He was eventually escorted to the medical department; however, the nurse on duty was absent. Deputy Walker advised plaintiff that the nurse had asked him to squeeze the infected site to remove the infection. Walker advised

plaintiff that he had 9 ½ years of medical experience so plaintiff allowed him to proceed. The pain was unbearable and accomplished nothing as only a small amount of pus was extracted. Walker notified the nurse of his observations and she administered an injection. Plaintiff again requested hospitalization; however, she once again advised him to allow the treatment to take its course. She also advised him that hospitalization was not called for and refused his request for a bottom bunk. According to plaintiff, he vomited, lost consciousness and became very weak. Later plaintiff was transferred to a holding cell where guards continually accused him of malingering. He experienced chills and was instructed to urinate in a cup and he refused advising the officers that he could not. Eventually they took his temperature and discovered that he was running fever of 102.6°. The guards called a nurse who advised them to keep him in the cell and she would examine him on Monday.

He was given a cup of cold water with BC powder. After he drank the medicine the guards took his temperature and it was 97°. Later he refused to drink water and his temperature was again up to 102°. At that point the guards called the nurse and advised that plaintiff was being sent to the hospital.

Upon arrival at the hospital he was examined by a physician who performed a "small surgery to see what he could do." The physician opined that plaintiff needed additional surgical intervention. Plaintiff was then sent back to jail on Sunday morning (December 18, 2011) with instructions to return on Monday (December 19, 2011).

Plaintiff returned to the hospital on Monday, was examined by a physician who scheduled additional surgery for the following day. Following the surgery on Tuesday, December 20, plaintiff remained in the hospital until Saturday, December 24, 2011. Plaintiff was returned to

jail with orders to monitor his temperature and blood pressure and to provide unspecified medication. Plaintiff was not allowed to take pain medications at the jail and substituted Motrin instead. During the following week plaintiff's packing and bandages were changed. However on December 31, 2011, the nurse did not change his packing and bandage. She did change it on January 1, 2012. Plaintiff complained of a headache and asked the nurse to check his blood pressure but she refused saying that she would check it only on Monday, Wednesday, and Friday. However, a corrections officer took his blood pressure and advised plaintiff that it was 162/119. Plaintiff was given medication to lower his blood pressure.

      On January 2 and 3, 2012, the nurse did not check on him and he was not provided his medication. Lt. Jones called the Warden who advised Jones to make sure that plaintiff's treatment was a priority to be administered first thing in the morning; however, he was not examined and treated by the nurse until 3 p.m. on January 4. Plaintiff forgot to have his blood pressure checked on January 4 because the nurse "got smart" with him. On January 5 his blood pressure was 161/105 and then 156/110.

      On January 6, 2012, plaintiff was returned to the hospital. His physician advised plaintiff that he needed additional protein in his diet and wrote a request to the prison administration; he also directed the prison to provide all medication ordered and to change plaintiff's dressing daily. Notwithstanding this order, plaintiff's dressing went unchanged on January 7, 2012. It was changed on January 8. Plaintiff's blood pressure was 172/112. On January 9 the nurse refused to give plaintiff his antibiotics because according to her he had taken the full dose provided. On January 10 his dressing were changed but the nurse made him take his own blood pressure. The dressing was changed on January 11, but the nurse again refused to take his blood pressure.

When plaintiff complained he was threatened with medical lock down. On January 12 his dressing was changed and his blood pressure was still high. His packing was changed every day thereafter from January 13-17, 2012; however, plaintiff's blood pressure remained high and the nurse cancelled the order for the extra milk. On January 18, 2012, plaintiff returned to the hospital and "all of his needs" were taken care of. On the 19th one of the guards changed his dressing because the nurse failed to do so during the day. On January 20, 2012, plaintiff was given the bandages and dressing and antibiotic and instructed to change his own dressing.

As noted above, plaintiff's complaint, dated October 29, 2013, was mailed on October 30, 2013 [Doc. 1, pp. 5-6]

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

Plaintiff's complaint is clear – he seeks damages for an incident that occurred while he was incarcerated at the JPCC during the period from December 2011 through January 2012. As is shown below, the facts alleged thus far clearly warrant dismissal of the complaint as frivolous because it is untimely and prescribed. Alternatively and additionally, as is shown below, plaintiff fails to state a claim for which relief may be granted.

## 2. Limitations

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. *See Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the general statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co*., 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. *See Harrison*

*v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff's claim that he was denied appropriate medical care accrued during the period between December 2011 through January 2012. Plaintiff was (or should have been) aware of all the facts necessary to know that his rights had been violated by the end of January 2012. The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). Plaintiff's complaint was filed in October 2013, clearly beyond the 1-year period of limitations, and therefore is subject to being dismissed as frivolous.

### *3. Equitable Tolling*

Equitable tolling principles apply to civil rights cases filed under 42 U.S.C. § 1983. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir.1998). However, nothing herein suggests that this plaintiff is entitled to equitable tolling of the limitations period. Lack of knowledge about the law does not justify equitable tolling. See *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding ignorance of the law does not excuse a person's failure to comply with a statute of limitations); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.1999) (holding plaintiff's unfamiliarity with the legal process and lack of legal representation during the filing period do not warrant equitable tolling). While disease or illness may warrant equitable tolling, the disease must be of such severity that it rendered the litigant unable to pursue his legal claims. See *Fisher v. Johnson*, 174 F.3d 710, 715 (1999) (referring to mental illness); *Smith v. Johnson*, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. Jan.3, 2001) (per curiam) (unpublished) (Also referring to mental illness in the context of a *habeas corpus* claim and holding, "[A] prisoner's claim of mental incompetence may support tolling the AEDPA time limit if the mental

8

impairment precluded the prisoner from effectively asserting his legal rights")

Based on the evidence currently available, plaintiff is not entitled to the benefits of equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir.2000) (discussing the availability of equitable tolling in the context of *habeas corpus* under the AEDPA and noting that neither ignorance of the law, lack of knowledge of filing deadlines, a prisoner's *pro se* status, lack of access to federal statutes and case law, incarceration, illiteracy, deafness, lack of legal training, nor actual innocence claims support equitable tolling of the AEDPA statute of limitations). See also *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002) ("[equitable tolling] will not be applied where the applicant failed to diligently pursue ... relief...").

Finally, plaintiff may claim that he is entitled to equitable tolling for the period during which he submitted administrative grievances. In his original complaint he claimed that he was unable to exhaust or complete all the steps mandated by the grievance procedure "[b]ecause they would not answer anything I sent in for this matter..." [Doc. 1] In his amended complaint he claimed, "While incarcerated in Jonesboro Corr. Center I filed numerous ARP's, Grievances, no response and letters to Sen. Landrieu and James LeBlanc, Sec. D.O.C. with no response." [Doc. 9] He provided a copy of a grievance dated March 3, 2012. [Doc. 14-1, p.1] According to the pleadings, he received no responses to his grievances. The regulations governing administrative remedies for prisoners, such as plaintiff, who are in the custody of the LDOC provide among other things time limits not only for filing grievances but also for responding to grievances. See 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857. According to the Rules, the final decision of the appeal process must be made by the Secretary within 45 days of receipt of the grievance. Pertinent to this inquiry is subsection (G)(4)(a) which provides,

"... <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process.</u>" Plaintiff's grievance was filed on March 3, 2012, and therefore he is entitled to equitable tolling of the period between March 3, 2012 (the date he filed his first grievance) and 45 days following April 17, 2012. However even if he is permitted tolling for this period, his complaint is still time-barred since more than one year elapsed between the date that his grievance process terminated under Louisiana law – April 17, 2012 – and the date he filed the instant complaint – October 29, 2013.

*4. Medical Care*

Even if plaintiff was permitted to toll limitations beyond the period calculated above, his complaint would still be subject to dismissal. The constitutional right of a convicted prisoner to prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of either of the defendants.

Indeed, plaintiff's complaint, taken as true for the purposes of this report, indicates that his original injury was initially misdiagnosed. Thereafter, however, by his own admission [Doc. 14-1, pp. 1-9] he received appropriate and adequate care both at a local hospital and at the prison.

To the extent that the defendants' choices establish negligence or even malpractice on their part, plaintiff still fails to state a claim since deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff's failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint for failing to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, April 14, 2014.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**